## Cora A. Blodgett, Appellee, v. Maud C. Blodgett et al., Appellants.

### Gen. No. 8,378.

Opinion filed March 15, 1932.
Rehearing denied May 4, 1932.

WILLIAM L. PIERCE, CHARLES W. FERGUSON, JAMES M. HUFF, ALEXANDER J. STROM and MARSHALL & MARSHALL, for appellants; ALEXANDER H. MARSHALL and MAURICE G. SHANBERG, of counsel.

PATRICK H. O'DONNELL and ROY F. HALL, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

Cora A. Blodgett filed a bill of chancery in the circuit court of Boone county, praying for the partition of certain lands in said county. She claims an interest in this property as the widow and heir at law of

Hudson D. Blodgett, deceased. The bill was amended from time to time and finally a bill was filed charging that James S. Blodgett during his lifetime owned the premises in question in this suit; that James S. Blodgett was the father of Hudson D. Blodgett and Andrew T. Blodgett, and Eva M. Noon.

James S. Blodgett, the father, died in January, 1903, leaving a last will and testament wherein he left to his widow, Hersey F. Blodgett and his children, Andrew T. Blodgett, Hudson D. Blodgett, and Eva M. Noon, all of his property, including 533 acres of land situated in Boone county, Illinois. Hersey F. Blodgett, the widow of James S. Blodgett, departed this life in 1916. At the time of the death of Hersey F. Blodgett, Andrew T. Blodgett had one child named Maud C. Blodgett, who is the appellant in this case. Andrew T. Blodgett died May 24, 1923, leaving no widow, but he left the said Maud C. Blodgett as his only child and heir at law. Hudson D. Blodgett married and had a son by his first wife. This son was dead at the time this suit was instituted. Hudson D. Blodgett died February 1, 1921, and at the time of his death was a resident of Boone county. Surviving him is his widow, who is the appellee in this case. He had no living children, nor descendants of any child or children at the time of his death. Andrew T. Blodgett and Eva M. Noon, his brother and sister, were both living at the time of Hudson Blodgett's death.

It appears from the record that the 533 acres of land in question which were left by James S. Blodgett to his widow and children, have been sold through the circuit court in a partition suit instituted by Andrew T. Blodgett in Boone county. That sometime prior to the filing of the partition suit, judgment had been taken by Andrew T. Blodgett against his brother, Hudson D. Blodgett; the total amount of the judgment obtained by Andrew T. Blodgett against his brother Hudson

was $2,230.73; they were taken under a power of attorney to confess judgment on what is commonly called judgment notes. Judgment was taken on November 20, 1918. In the bill for partition filed by Andrew F. Blodgett was set forth the fact that judgments had been obtained by Andrew against his brother, Hudson, and that said judgments were owned and possessed by the said Andrew, and said judgments were a lien on the interest of Hudson D. Blodgett in said 533 acres of land. On the hearing of the case at the partition suit the court found and decreed that the judgments were valid and existing judgments. The premises were sold at the partition sale for the sum of $60,136. Andrew T. Blodgett purchased the farm and received a master's deed for all of said property. The cost of the partition proceeding was $2,322.49. This amount was deducted from the sale price, leaving a balance of $57,813.51 to be divided equally between the two brothers and the sister. The share of each amounted to the sum of $19,271.17. Andrew T. Blodgett did not pay anything to the master in chancery in payment for his deed for the premises, except the amount of the costs as originally stated. He presented a receipt to the master in chancery of Eva M. Noon for her one-third interest in the property, and also a receipt from Hudson D. Blodgett for his interest in the property.

In the amended bill filed by Cora A. Blodgett, it is charged that the judgments taken by Andrew T. Blodgett on the notes of Hudson D. Blodgett were fraudulent and it was done for the purpose of defrauding her of her marital rights in the property of her husband, Hudson D. Blodgett; that Hudson D. Blodgett did not owe his father James S. Blodgett, nor Andrew T. Blodgett any sum of money whatsoever, and that there was no consideration for the giving of the notes. The bill charges and states the fact to be that

Andrew T. Blodgett died during the pendency of the suit, and Maud C. Blodgett is the only child and heir at law to inherit her father's estate; that on account of the fraud practiced upon appellee by Andrew T. Blodgett and her husband Hudson D. Blodgett, Maud C. Blodgett held the proceeds of the sale of the partitioned premises in trust for the heirs of Hudson D. Blodgett, deceased; that the same were so held and had been converted from real into personal property, that she being the widow of Hudson D. Blodgett was entitled to the full amount of the distributive share of Hudson D. Blodgett, deceased, with interest from the date of the sale of the premises at the partition sale.

Maud C. Blodgett filed a cross-bill in said proceeding and alleged that her grandfather, James S. Blodgett, was at the time of his death seized in fee simple of all the real estate in question, and departed this life the 11th day of January, A. D. 1903, leaving a last will and testament, and attaches a copy of the will of James S. Blodgett, deceased. The cross-bill sets forth the relationship of the parties to this suit, to James S. Blodgett, and claims according to the last will and testament of her grandfather that at the death of Hudson Blodgett, the real estate of her grandfather became vested in her father, Andrew T. Blodgett and her aunt, Eva M. Noon, and prayed that partition may be had of the premises in question. Cora A. Blodgett filed her answer denying the construction placed upon the will of James S. Blodgett, deceased, by the cross-bill as contended by the appellants.

It appears from the evidence that about the time the proceeding was instituted for the sale of these premises at the original partition suit, the complainant, Cora A. Blodgett, had filed a suit for separate maintenance against her husband, Hudson D. Blodgett, and she alleged in her bill that the notes in question on which the judgments were obtained by Andrew T,

Blodgett against his brother, Hudson Blodgett, were forgeries and made for the expressed purpose of defeating her marital rights. The original bill was filed at the September Term, 1922. The pleadings herein, the evidence, arguments, etc., were continued from time to time and the case was not finally disposed of until the 21st day of February, 1930. The court found and decreed that the partition proceedings were a fraud upon the rights of Cora M. Blodgett, and held that the proceeds of the sale of the real estate were impressed with a trust in favor of the complainant, and decreed that Maud C. Blodgett pay to the complainant the sum of $30,882.02, the sum representing the amount of the original sale of Hudson D. Blodgett's interest in the real estate, one-third of the costs that had been assessed by Andrew T. Blodgett against Hudson D. Blodgett's estate, together with interest from the date of sale of the premises, etc. From the rendition of this decree, Maud C. Blodgett prayed an appeal to the Supreme Court of the State of Illinois, and the same has been transferred by the said court to this court.

The record in this case is very voluminous and the appellants have assigned numerous matters in which the court erred in his findings. The first is: ''That the court erred in the construction of the will he placed on the will of James S. Blodgett, deceased.'' We are of the opinion that the court did not err in the construction that he placed on the will of James S. Blodgett, and at the death of Hersey F. Blodgett, the widow of James S. Blodgett, that the property vested in the two sons and the daughter of James S. Blodgett, deceased.

It is next contended that the court erred in finding that fraud had been practiced in taking of the notes, rendition of judgment on the same and the sale of the premises to Andrew T. Blodgett and charging the in-

terests of Hudson D. Blodgett with the amount of the judgment. It would be impracticable in this opinion to discuss all of the evidence bearing upon the question of fraud in the procurement of these notes and involving the partition proceedings. We are of the opinion that the evidence clearly shows that the note purported to have been given by H. D. Blodgett to his father, James S. Blodgett, on April 2, 1902, and later indorsed by him, was not given on the date that it bears date. The evidence is uncontradicted that on April 2, 1902, the Peoples Bank of Belvidere, Illinois, on whose blank form this note is written, had no such notes and had none such until about 10 years after the date that this note purports to have been given. The officers of the bank, the printers, and several others say that the words "capital and surplus of $150,000.00" were not used on their notes until about the year 1912. A photostatic copy of this note clearly indicates that the left-hand edge of the note has been cut off, but the words and figures "capital and surplus $150,000.00" are easily discernible. The evidence shows that people familiar with the handwriting and signature of James S. Blodgett, deceased, testified that the name "James S. Blodgett" indorsed on the back of said note was not the true signature of James S. Blodgett, deceased.

This court can come to no other conclusion but that this note was not given until long after the death of James S. Blodgett and that the "James S. Blodgett" indorsed on the back of said note, is not in the true handwriting of James S. Blodgett, deceased; and that James S. Blodgett never had any interest in the purported note in question; that Andrew T. Blodgett had no interest in said note or legal charge against H. D. Blodgett as set forth in said purported promissory note.

In the month of May, 1922, or a little over a year after the death of Hudson D. Blodgett, the widow,

Cora A. Blodgett, found, as she describes it, "tucked in between the back and top part of an old davenport in her home," which had been the home of her husband at the time of his death, and said davenport being used in the home at the time and previous to the husband's death, appellee's Exhibits Nos. 16, 17, 18 and 19, fastened together by a rusty paper fastener, commonly called a "clip." These exhibits were introduced in evidence,—and we think properly so—and showed that on August 2, 1920, Andrew T. Blodgett sent his brother Hudson a statement of the account between them. These exhibits show that Andrew Blodgett had kept a correct account of all business transactions between himself and his brother Hudson; that since the partition proceedings and the sale of the property under the same, he recognized that Hudson D. Blodgett had an interest in the same and he has charged him with one-third of all the expense of the same. Taking the whole of the evidence including these statements of account, the manner in which the notes were executed, the fact that the complainant, Cora A. Blodgett, had started a separate maintenance suit against her husband, Hudson Blodgett, and all the facts and circumstances together with said partition suit, this court is of the opinion that the whole transaction was fraudulent and was done for the purpose of defeating the rights of Cora A. Blodgett in her husband's property.

It is contended by the appellants that even though the appellee proved that the giving of the notes and the partition proceedings were fraudulent as to her marital rights, and were done for the sole purpose of defeating her rights, nevertheless she could not recover in this suit because Hudson D. Blodgett, through whom she is claiming the right to recover the proceeds in the partition suit, is a party to the fraud and courts will not give relief to parties who are *in pari delicto*. Both parties to this litigation have spent much time

in presenting their respective sides on this part of the controversy. Numerous cases have been cited by the appellee as sustaining the proposition that, although the parties to the transaction are *in delicto,* still they are not *in pari delicto,* and equity will grant relief to the one who is comparatively innocent, on the ground of public policy. The appellants concede this to be the rule, but say that Hudson D. Blodgett is as much to blame or more so than his brother Andrew in carrying out the alleged fraudulent claim to defeat the rights of his wife. There is no contention that Cora A. Blodgett had anything to do with, or had any knowledge of, the fraudulent transaction until over a year after her husband's death. As soon as she learned of the fraud that had been practiced against her, she immediately started suit to recover the interest in her husband's estate, which she claimed was rightfully due her.

She alleged in her bill, which, in our opinion, is sustained by competent proof, that the whole transaction was for the sole purpose of defrauding her of her rights in her husband's property. Surely, Cora A. Blodgett, under these circumstances, could not be *in pari delicto* or a party to the fraud that was practiced against her. She surely should have a right in a court of equity to be granted relief against the fraud that had been practiced against her.

We think the court properly found that Cora A. Blodgett, the complainant in said suit, was entitled to have the relief as prayed for, in her bill of complaint and that the judgment of the circuit court of Boone county should be affirmed.

*Judgment affirmed.*